**Exhibit 2**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:22-CV-23196-HUCK/Becerra**

JOHN F. LABRIOLA

      Plaintiff,

v.

MIAMI-DADE COUNTY,

      Defendant.

_____/

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

Defendant, Miami-Dade County ("Defendant" and/or "MDC"), pursuant to the Federal Rules of Civil Procedure and the Court's Local Rules, hereby serves its Responses and Objections to Plaintiffs' Request for Admissions.

Dated: April 24, 2023           Respectfully submitted,

                                GERALDINE BONZON-KEENAN
                                Miami-Dade County Attorney
                                Stephen P. Clark Center
                                111 N.W. 1st Street, Suite 2810
                                Miami, FL  33128

            By:      */s/ William X. Candela*
                                William X. Candela
                                Florida Bar No. 759317
                                E-mail: wxc@miamidade.gov
                                Assistant County Attorney
                                  Andrea S. de Oña
                                  Assistant County Attorney
                                  Florida Bar No. 1019568
                                  Email: Andrea.deona@miamidade.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the date shown above a true and correct copy of the

foregoing was served on all counsel of record via electronic mail.

/s/ *William X. Candela*
William X. Candela

## <u>SERVICE LIST</u>

**Alexander Bumbu, Esq**.
Florida Bar No. 1024989
1021 Ives Dairy Road
Bldg. 3, Suite 115
Miami, FL 33131
Tel:  (786) 496-3946
Email: abumbu@pji.org

Attorneys for Plaintiff
*Served via electronic mail*

**William X. Candela**
Assistant County Attorney
Florida Bar No. 759317
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, FL 33128
Tel: (305) 375-5151
Fax: (305) 375-5634
Email: wxc@miamidade.gov

Attorney for Defendant
*No Service Made*

**Andrea S. de Oña**
Assistant County Attorney
Florida Bar No. 1019568
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, FL 33128
Tel: (305) 375-5151
Fax: (305) 375-5634
Email: andreadeona@miamidade.gov

Attorney for Defendant
*No Service Made*

1. ADMIT that Exhibit 1 to the Amended Complaint [ECF No. 8-1] contains true, correct, and complete copies of performance awards that Labriola received while he worked for the County.

**RESPONSE:** Admit

2. ADMIT that Exhibit 2 to the Amended Complaint [ECF No. 8-2] contains true, correct, and complete copies of press releases which Labriola drafted and/or edited while he worked for the County.

**RESPONSE:** Admit

3. ADMIT that Exhibit 3 to the Amended Complaint [ECF No. 8-3] contains a true, correct, and complete copy of the Opinion Piece.

**RESPONSE:** Admit

4. ADMIT that Exhibit 4 to the Amended Complaint [ECF No. 8-4] contains a true, correct, and complete copy of an email which Jonathan Edwards sent to staff from all 13 BCC commissioners' offices as well as to at least one person from the Office of the Mayor.

**RESPONSE:** Admit

5. ADMIT that Exhibit 4 to the Amended Complaint [ECF No. 8-4] contains a true, correct, and complete copy of an email which Maggie Fernandez – the Chief of Staff to Miami-Dade County District 5 Commissioner Eileen Higgins – sent to Douglas "Doug" Hanks – a Miami Herald reporter.

**RESPONSE:** Admit

6. ADMIT that Exhibit 5 to the Amended Complaint [ECF No. 8-5] contains a true, correct, and complete copy of an article that was published in the Miami Herald.

**RESPONSE:** Admit

7.      ADMIT that Exhibit 6 to the Amended Complaint [ECF No. 8-6] contains a true, correct, and complete copy of a letter which Orlando Gonzales wrote to Erin New on March 5, 2021.

**RESPONSE:** Admit

8.      ADMIT that Exhibit 6 to the Amended Complaint [ECF No. 8-6] contains a true, correct, and complete copy of an email exchange between Erin New and Orlando Gonzales.

**RESPONSE:** Admit

9.      ADMIT that Exhibit 7 to the Amended Complaint [ECF No. 8-7] contains a true, correct, and complete copy of the Disciplinary Action Report which then-Chairman Díaz issued to Labriola on March 5, 2021.

**RESPONSE:** Admit

10.      ADMIT that Exhibit 7 to the Amended Complaint [ECF No. 8-7] contains true, correct, and complete copies of emails that were exchanged between Labriola and Isidoro Lopez.

**RESPONSE:** Admit

11.      ADMIT that Exhibit 8 to the Amended Complaint [ECF No. 8-8] contains a true, correct, and complete copy of the County's "Personnel Rules for the Classified Service."

**RESPONSE:** [Procedure No. 470 – effective date 1/17]

12.      ADMIT that Exhibit 9 to the Amended Complaint [ECF No. 8-9] contains a true, correct, and complete copy of an article that was published in the Miami Herald.

**RESPONSE:** Admit

13.      ADMIT that Exhibit 10 to the Amended Complaint [ECF No. 8-10] contains a true, correct, and complete copy of a letter written by Dennis Grossman to Isidoro Lopez and Olga Vega.

**RESPONSE:** Admit

14.     ADMIT that Exhibit 11 to the Amended Complaint [ECF No. 8-11] contains a true, correct,

and complete copy of a letter written by Dennis Grossman to Bill Candela.

**RESPONSE:** Admit

15.     ADMIT that Exhibit 12 to the Amended Complaint [ECF No. 8-12] contains a true, correct,

and complete copy of the termination letter which then-Chairman Díaz sent to Labriola.

**RESPONSE:** Admit

16.     ADMIT that Exhibit 13 to the Amended Complaint [ECF No. 8-13] contains a true, correct,

and complete copy of the memorandum which Erin New wrote which included what HRFEP

found during its investigation into whether Labriola was engaging in harassing or

discriminatory conduct in the workplace.

**RESPONSE:** Admit

17.     ADMIT that Exhibit 14 to the Amended Complaint [ECF No. 8-14] contains a true, correct,

and complete copy of an email that Sally Heyman sent to Labriola.

**RESPONSE:** Admit

18.     ADMIT that Exhibit 15 to the Amended Complaint [ECF No. 8-15] contains a true,

correct, and complete copy of Miami-Dade County Implementing Order 7-45.

**RESPONSE:** Admit

19.     ADMIT that Exhibit 16 to the Amended Complaint [ECF No. 8-16] contains a true,

correct, and complete copy of the training module for a County diversity training session for

County employees called "Transgender Sensitivity and Inclusion."

**RESPONSE**: Admit

20.    ADMIT that Exhibit 17 to the Amended Complaint [ECF No. 8-17] contains a true, correct, and complete description of a County diversity training session for County employees called "LGBTQ+ Sensitivity."

**RESPONSE:** Admit

21.    ADMIT that Exhibit 18 to the Amended Complaint [ECF No. 8-18] contains a true, correct, and complete copy of the training module for a County diversity training session for County employees called "Overview of the County's Anti-Discrimination Policy."

**RESPONSE**: Admit

22.    ADMIT that at the time of the events described in Labriola's Amended Complaint, Labriola was a United States citizen and resident of the United States and Broward County, Florida.

**RESPONSE:** Defendant lacks knowledge or information and, therefore, denies No. 22.

23.    ADMIT that Labriola currently resides in Citrus County, Florida, and is still a United States citizen.

**RESPONSE:** Defendant lacks knowledge or information and, therefore, denies No. 23.

24.    ADMIT that at the time of the events described in Labriola's Amended Complaint, Labriola was a Commission Media Aide within the Media Division of the BCC.

**RESPONSE**: Admit

25.    ADMIT that the County is within and subject to the jurisdiction of the United States District Court for the Southern District of Florida.

**RESPONSE**: Objection. This Request calls for a legal conclusion and is subject to the Court's determination.

32.    ADMIT that from June 2013 through April 13, 2021, Labriola worked as a Commission Media Aide within the Media Division.

**RESPONSE**: Admit

33.    ADMIT that the Media Division is within the Office of the Chair.

**RESPONSE**: Admit

34.    ADMIT that the Office of the Chair is within the BCC.

**RESPONSE**: Admit

35.    ADMIT that the Office of the Chair is under the purview of whatever commissioner happens to be serving as the BCC's chairperson.

**RESPONSE**: Admit

36.    ADMIT that the Office of the Chair rotates among commissioners every two years.

**RESPONSE**: Admit

37.    ADMIT that for the period relevant to this Amended Complaint, the chairperson was District 12 Commissioner José "Pepe" Díaz.

**RESPONSE**: Denied.

38.    ADMIT that then-Chairman Díaz's Chief of Staff was Isidoro Lopez.

**RESPONSE**: Admit

39.    ADMIT that both then-Chairman Díaz and Isidoro Lopez were supervisors over Labriola.

**RESPONSE**: Admit

40.    ADMIT that then-Chairman Díaz had final decision-making authority over Labriola's employment.

**RESPONSE**: Admit

41.    ADMIT that Labriola received performance awards.

**RESPONSE**: Admit

42.     ADMIT that as a Commission Media Aide, Labriola chiefly drafted and edited mundane

press releases that did not have his name or contact information on them.

**RESPONSE**: Denied.

43.     ADMIT that the press releases which Labriola drafted and edited announced such

miscellaneous things as a street renaming, a ribbon-cutting for a new library, a commissioner's

next meeting with the public about COVID-19, the BCC's approval of a resolution concerning

the Marlins settlement, a commissioner urging property tax relief for residents, and the

construction of a new bus terminal.

**RESPONSE**: Denied.

44.     ADMIT that the press releases which Labriola drafted and edited announced things that

had happened or were going to happen: a new ordinance passed, a new program was created,

or a commissioner would host some event.

**RESPONSE**: Denied.

45.     ADMIT that Labriola did not insert any of his opinions into the press releases.

**RESPONSE**: Denied.

46.     ADMIT that Labriola only drafted and/or edited the press releases at the direction of and

under the review of other staff.

**RESPONSE**: Denied.

47.     ADMIT that Labriola assisted all 13 commissioners' offices, as requested, in handling

public records requests, drafting or editing press releases, and related tasks.

**RESPONSE**: Admit

48.     ADMIT that Labriola did not act as a spokesperson for anyone.

**RESPONSE**: Denied.

49.    ADMIT that Labriola's name or contact information did not appear on press releases as a contact person for the media.

**RESPONSE**: Denied.

50.    ADMIT that Labriola did not issue any press releases without the prior approval and review from the respective commissioner's office staff.

**RESPONSE**: Denied.

51.    ADMIT that Labriola was a scrivener who drafted written documents pursuant to instructions and the direction of his supervisors and commissioners' staff, who subjected his drafts to edit and review.

**RESPONSE**: Denied.

52.    ADMIT that press releases were not issued from Labriola's work email address but from a generic office address, bccmedia@miamidade.gov.

**RESPONSE**: Denied.

53.    ADMIT that Labriola did not supervise any employees.

**RESPONSE**: Denied.

54.    ADMIT that Labriola was not in a managerial or policymaking position.

**RESPONSE**: Denied.

55.    ADMIT that Labriola did not have authority to control the salary, schedule, work location, responsibilities, status, promotion, demotion, hiring, firing, discipline, or any other employment aspect of any County employee.

**RESPONSE**: Admit

63.     ADMIT that Labriola believes that transgenderism, homosexual marriage, drag queen story hours, and crossdressing are sinful.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 63.

64.     ADMIT that Labriola believes that he cannot affirm as true ideas and concepts that he deems untrue and sinful (including tenets of transgenderism), as this would dishonor God and violate Biblical injunctions against lying.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 64.

65.     ADMIT that, because of his religion, Labriola believes that he cannot refer to people by pronouns that do not match their biological sex.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 65.

66.     ADMIT that Labriola believes that Christians are commanded to preach God's truths.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 66.

67.     ADMIT that Labriola believes that sharing God's truths requires sharing even those Biblical teachings that may be offensive to those who do not adhere to them.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 67.

68.     ADMIT that the portions of the Opinion Piece which addressed transgenderism, homosexual marriage, drag queen story hours, and crossdressing were Labriola's way of preaching about human sexuality, and that preaching about human sexuality fits under the umbrella of Labriola's religious obligation to preach what he believes are God's truths.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 68.

69.     ADMIT that Labriola believes he has a moral obligation to stand up for what he believes is the truth through the use of his writing talents.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 69.

70.    ADMIT that absent knowing Labriola on a personal level, a reader of the Opinion Piece

would have no way of linking Labriola to the County just by reading the Opinion Piece.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 70.

71.    ADMIT that the Miami Herald learned of the Opinion Piece only because 1) Jonathan

Edwards – who is a complete stranger to Labriola – found it in the obscure, short-lived online

newsletter of an obscure independent retail bookstore, 2) Edwards had to research Labriola to

find out that he worked for the County, 3) Edwards emailed BCC staff and the Mayor's Office

complaining about the Opinion Piece, 4) and one of those recipients – Maggie Fernandez, a

County employee – leaked Edwards's email and the Opinion Piece to a Miami Herald reporter.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 71.

72.    ADMIT that because of his Opinion Piece, Labriola was suspended and ordered to undergo

extra training without prior notice to him and without an opportunity for him to be heard.

**RESPONSE**: Denied.

73.    ADMIT that Labriola was not allowed to appeal the suspension or training order.

**RESPONSE**: Admit

74.    ADMIT that the Disciplinary Action Report in Exhibit 7 to the Amended Complaint [ECF

No. 8-7] confirms that Labriola was an "Exempt" employee.

**RESPONSE**: Admit

75.    ADMIT that "Exempt" employees are exempt from the County's Classified Service.

**RESPONSE**: Admit

76.    ADMIT that Labriola served the three-day suspension without pay.

**RESPONSE**: Admit

82.     ADMIT that none of the part-time and freelance jobs that Labriola has been working since

his termination by the County comes even close to providing him the same amount of money

that he was making as a Commission Media Aide for the County.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 82.

83.     ADMIT that Labriola wrote the Opinion Piece as a private citizen.

**RESPONSE**: Admit

84.     ADMIT that Labriola did not identify himself as a County employee in the Opinion

Piece.

**RESPONSE**: Admit

85.     ADMIT that Labriola did not address or direct the Opinion Piece to any of his superiors

or co-workers.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 85.

86.     ADMIT that Labriola wrote the Opinion Piece in the March 2021 edition of the online

newsletter "Sophie's Voice," which was published by Sophie's Publishing House, Inc.

**RESPONSE**: Admit

87.     ADMIT that "Sophie's Voice" is not a County publication.

**RESPONSE**: Admit

88.     ADMIT that in the Opinion Piece, Labriola shared some thoughts on matters of public

concern.

**RESPONSE**: Objection. This Request calls for a legal conclusion and is subject to the Court's
determination.

89.     ADMIT that, in the Opinion Piece, Labriola shared some of his thoughts on

transgenderism, the Equality Act, homosexual marriage, and drag queen story hours.

**RESPONSE**: Defendant lacks knowledge or information and, therefore, denies No. 82.

90.     ADMIT that Labriola's free speech interest in writing the Opinion Piece outweighed the County's interest in promoting the efficiency of the public services it performs.

**RESPONSE**: Denied.

91.     ADMIT that HRFEP did not find any evidence to establish that Labriola was engaged in any harassing or discriminatory behavior based on any protected characteristic within the workplace after it interviewed all of his coworkers in the Media Division. [ECF No. 8-13].

**RESPONSE**: Denied.

92.     ADMIT that the Opinion Piece caused no workplace disruption.

**RESPONSE**: Denied.

93.     ADMIT that from his suspension on March 5, 2021, until his termination on April 13, 2021 (inclusive), Labriola edited press releases and had to work together with other County employees on every one of those press releases.

**RESPONSE**: Denied.

94.     ADMIT that Labriola did not work within a sheriff's office, police department, fire department, or emergency medical services.

**RESPONSE**: Admit

95.     ADMIT that Labriola was suspended without pay for three days and ordered to undergo extra diversity training because of what he wrote in his Opinion Piece.

**RESPONSE**: Denied.

96.     ADMIT that then-Chairman Díaz would not have suspended Labriola or ordered him to undergo extra diversity training but for the Opinion Piece.

**RESPONSE**: Denied.

97.     ADMIT that then-Chairman Díaz took an adverse employment action against Labriola when he suspended Labriola without pay for three days.

**RESPONSE**: Objection. This Request calls for a legal conclusion and is subject to the Court's determination.

98.     ADMIT that then-Chairman Díaz took an adverse employment action against Labriola when he ordered Labriola to undergo extra diversity training.

**RESPONSE**: Denied.

99.     ADMIT that although then-Chairman Díaz said on page 2 of the Disciplinary Action Report [ECF. No. 8-7] that he was punishing Labriola under IO 7-45 and other [unnamed] County policies, he was actually punishing Labriola only under IO 7-45.

**RESPONSE**: Admit

100.    ADMIT that the County's application of IO 7-45 and the other unnamed County policies to Labriola's Opinion Piece chilled Labriola's speech and would deter other employees from engaging in similar constitutionally protected speech.

**RESPONSE**: Denied.

101.    ADMIT that then-Chairman Díaz fired Labriola for Labriola's refusal to undergo extra diversity training.

**RESPONSE**: Denied.

102.    ADMIT that the extra diversity training which Labriola would have had to undergo would have included "Transgender Sensitivity and Inclusion" [the module for which is in ECF No. 8-16].

**RESPONSE**: Denied.

103.    ADMIT that the extra diversity training which Labriola would have had to undergo would have included "LGBTQ+ Sensitivity" [a description of which is in ECF No. 8-17].

**RESPONSE**: Denied.

104.    ADMIT that the extra diversity training which Labriola would have had to undergo would have included "Overview of the County's Anti-Discrimination Policy" [the module for which is in ECF No. 8-18].

**RESPONSE**: Denied.

105.    ADMIT that then-Chairman Díaz took an adverse employment action against Labriola when he terminated Labriola's employment with the County.

**RESPONSE**: Objection. This Request calls for a legal conclusion and is subject to the Court's determination.

106.    ADMIT that it is possible for Labriola to sue the County under 42 U.S.C. § 1983 for the reasons given in ¶¶ 116-118 of the Amended Complaint [ECF No. 8].

**RESPONSE**: Objection. This Request calls for a legal conclusion and is subject to the Court's determination.

107.    ADMIT that when then-Chairman Díaz suspended Labriola, fired Labriola, and ordered Labriola to undergo extra training, then-Chairman Díaz headed the Office of the Chair.

**RESPONSE**: Denied.

108.    ADMIT that when then-Chairman Díaz suspended Labriola, fired Labriola, and ordered Labriola to undergo extra training, then-Chairman Díaz was exercising final policymaking authority.

**RESPONSE**: Denied.

109.    ADMIT that IO 7-45 authorized then-Chairman Díaz to take adverse employment actions against his subordinates.

**RESPONSE**: Admit

110.    ADMIT that Miami-Dade County Code of Ordinances § 2-01(2)(e) says that the BCC
Chairperson shall "supervise all persons who shall serve as employees of the entire [BCC]…"

**RESPONSE**: Objection. The Miami-Dade County Code of Ordinances speaks for itself.

111.    ADMIT that Miami-Dade County Code of Ordinances § 2-47 says that "An employee may
be suspended…or dismissed by the head of his department or designee thereof…"

**RESPONSE**: Objection. The Miami-Dade County Code of Ordinances speaks for itself.

112.    ADMIT that the termination letter [ECF No. 8-12] was on BCC letterhead and included
the County's seal.

**RESPONSE**: Admit

113.    ADMIT that Labriola could not appeal his suspension, firing, or order to undergo extra
training since those actions were not eligible for any administrative review.

**RESPONSE**: Denied.

114.    ADMIT that then-Chairman Díaz's decisions to suspend Labriola, order Labriola to
undergo extra training, and fire Labriola were final decisions.

**RESPONSE**: Denied.

115.    ADMIT that any decision made by Chief of Staff Isidoro Lopez against Labriola was
ratified by then-Chairman Díaz.

**RESPONSE**: Denied.

116.    ADMIT that any action taken by Chief of Staff Isidoro Lopez against Labriola was ratified
by then-Chairman Díaz.

**RESPONSE**: Denied.