**Exhibit 11**

```
 1            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
 2         CASE NO. 1:22 CV-23196-HUCK-Becerra

 3

 4   JOHN F. LABRIOLA,

 5        Plaintiff,

 6   vs.

 7   MIAMI-DADE COUNTY,

 8        Defendant.
     _____/
 9

10

11                      - - -
             VIDEOTAPED VIDEO CONFERENCE
12              DEPOSITION OF ERIN NEW
                        - - -
13

14

               Monday, June 26th, 2023
15      12:05 o'clock p.m. - 4:00 o'clock p.m.

16

17             ZOOM Video Conference

18

19

20

21

22

23     Susan D. Fox, Florida Professional Reporter
            Notary Public, State of Florida
24

25
```

```
 1   APPEARANCES VIA VIDEO CONFERENCE:

 2       ON BEHALF OF THE PLAINTIFF:
         PACIFIC JUSTICE INSTITUTE
 3       ALEXANDER BUMBU, ESQUIRE
         1021 Ives Dairy Road
 4       Suite 115, Building Three
         Miami, Florida 33179
 5
         ON BEHALF OF THE DEFENDANT:
 6       MIAMI-DADE COUNTY ATTORNEY'S OFFICE
         WILLIAM X. CANDELA, ESQUIRE
 7       STEPHEN B. CLARK CENTER
         111 Northwest First Street
 8       Suite 2810
         Miami, Florida 33128
 9
     ALSO PRESENT:
10
         JOE VICARI (Videographer)
11       JOHN LABRIOLA
                              - - -
12                         I N D E X
                              - - -
13   Videotaped Deposition of Erin New            Page No.
     Direct Examination by Mr. Bumbu                  8
14                            - - -
               INDEX OF PLAINTIFF'S EXHIBITS
15                            - - -
     No.     Description                          Page No.
16   A       Composite; Documents                     31

17   B       Composite; Correspondence                56

18   C       Transgender_Sensitivity.PDF              56

19   D       County_Wide_Training_2020.PDF            57

20   E       Error Page                               57

21   E-1     Document                                 83

22   F       Memorandum                               85

23   G       E-Mails                                 104

24   H       E-Mail                                  106

25
```

```
 1          Videotaped video conference
 2   deposition taken before Susan D. Fox, Florida
 3   Professional Reporter and Notary Public for
 4   the State of Florida at Large, in the above
 5   cause.
 6                    - - -
 7          THE VIDEOGRAPHER:  Okay.  We are now
 8     on the record and the time is 12:03 p.m.
 9          This is this video deposition of Erin
10     New in the matter of John F. Labriola vs.
11     Miami-Dade County.
12          This deposition is being held
13     remotely via Zoom meeting on Monday, June
14     26th, 2023.
15          The videographer is Joe Vicari.  The
16     court reporter is Susan Fox.
17          Now at this time will Counsel
18     appearing remotely please identify
19     yourselves for the record and who you
20     represent beginning with the noticing
21     attorney.
22          MR. BUMBU:  Good afternoon.  My name
23     is Alexander Bumbu.  I represent the
24     Plaintiff, John Labriola, and I am the
25     noticing attorney.
```

```
 1         MR. CANDELA:  Good afternoon.  Bill
 2   Candela, Assistant County Attorney on
 3   behalf of Defendant, Miami-Dade County.
 4         THE VIDEOGRAPHER:  Okay.  Thank you,
 5   Counsel.
 6         Court Reporter, please.
 7         THE COURT REPORTER:  Okay.
 8         The attorneys participating in this
 9   deposition acknowledge that I, the court
10   reporter, am not present with the Witness
11   and that I will be reporting the
12   proceedings and administering the oath
13   remotely.  This arrangement is pursuant to
14   the Florida Supreme Court Administrative
15   Order No. AOSC-20-16 (and extended by
16   AOSC-20-17).  The parties and their
17   counsel consent to this arrangement and
18   waive any objections to this manner of
19   reporting.
20         Please indicate your agreement by
21   stating your name and your agreement on
22   the record, Counsel.
23         MR. BUMBU:  Alexander Bumbu, Counsel
24   for the Plaintiff, and I agree with the
25   stipulation.
```

```
1            MR. CANDELA:  Bill Candela.  I agree.
2            THE COURT REPORTER:  Okay.
3            Ma'am, would you raise your right
4       hand, please?
5                      - - -
6  Thereupon,
7                    ERIN NEW
8  having been first duly sworn or affirmed
9  pursuant to the Florida Constitution and
10 Florida Rules of Judicial Administration
11 2.20(a)(2)(B)(iv) and 2.205(a)(2)(B)(v), was
12 examined and testified as follows:
13           THE WITNESS:  I do.
14           THE COURT REPORTER:  Okay.  Great.
15           Your Witness, Counsel.
16           All right.  Your Witness, Counsel.
17                      - - -
18             DIRECT EXAMINATION
19 BY MR. BUMBU:
20    Q.   All right.  Good afternoon, Ms. New.
21         Before I ask any questions I want to
22 remind you that you are under oath and that
23 you have an obligation to tell the truth and
24 that any false statement you say could subject
25 you to a perjury charge.  Am I clear on that?
```

```
 1   in Camden.
 2        Q.   What year was that?
 3        A.   2008.
 4        Q.   Did you get a J.D.?
 5        A.   Yes.
 6        Q.   Did you get an L.M.?
 7        A.   No.
 8        Q.   Have you ever been arrested for a
 9   crime?
10        A.   No.
11        Q.   Have you ever been convicted of a
12   crime?
13        A.   No.
14        Q.   Apart from your J.D., do you have any
15   occupation licenses?
16        A.   I am a member of the Florida and New
17   Jersey Bars.
18        Q.   Okay.  Do you have any
19   certifications?
20        A.   No.
21        Q.   Now, where did you work during March
22   and April of 2021?
23        A.   For Miami-Dade County.
24        Q.   And what was your job title?
25        A.   Division Director of Human Rights and
```

```
 1   Fair Employment Practices.
 2        Q.   And as the Division Director of HR
 3   FEP, what were your duties?
 4        A.   I'm responsible for managing an area
 5   of the Human Resources Department which
 6   handles the enforcement of the county's human
 7   rights ordinance, and also we also handle the
 8   implementation of the county's policies
 9   related to EEO and preventing unlawful
10   harassment.
11        Q.   And how long had you -- let me
12   rephrase that, actually.
13             Are you still working in that
14   position?
15        A.   Yes.
16        Q.   And how long have you worked in that
17   position?
18        A.   Approximately seven years.
19        Q.   So did you start in 2016?
20        A.   No.  Well, that's when I -- I -- I've
21   been working for the county since 2009.  I was
22   promoted, started this position, my current
23   job in seven years ago, approximately,
24   October -- let's see -- of 2015.
25        Q.   October of 2015?
```

```
 1      A.   Um-hmm.
 2      Q.   Okay.  Now, who are your supervisors?
 3      A.   My supervisor is Arleene Cuellar.
 4      Q.   And above her is the County CFO,
 5   correct?
 6      A.   Correct.
 7      Q.   And above the County CFO is the
 8   Mayor, correct?
 9      A.   Correct.
10      Q.   All right.  What was your work
11   relationship with John Labriola?
12      A.   I did not have any relationship with
13   him.
14      Q.   Now, do you recall that Mr. Labriola
15   was fired for refusing to undergo training,
16   correct?
17           MR. CANDELA:  Object to the form.
18           MR. BUMBU:  You may answer.
19           THE WITNESS:  Yes.
20   BY MR. BUMBU:
21      Q.   Were you responsible for determining
22   which training Mr. Labriola would under go?
23      A.   No.
24      Q.   Then who was responsible for making
25   that determination?
```

1    A.   It would be the chair's office where
2  he was employed.
3    **Q.   And did you discuss the training he**
4  **would undergo with anyone?**
5    A.   I discussed the fact that the chair's
6  office wanted him to take training on IO 7-45.
7    **Q.   And who did you discuss that with?**
8    A.   Elda Green and Izzy, Isidoro.
9    **Q.   Right.  Izzy -- I apologize.**
10       **Go ahead.**
11   A.   Isidoro, and I'm sorry I can't recall
12  his last name.  He was the Chief of Staff.
13   **Q.   Was that Isidoro Lopez?**
14   A.   Yes.
15   **Q.   Was the training that Mr. Labriola**
16  **would undergo approved by Arleene Cuellar?**
17   A.   No.
18   **Q.   Well, was the training that**
19  **Mr. Labriola would undergo approved by anybody**
20  **in the office of the Chair?**
21   A.   We -- no.
22   **Q.   Then who would approve the specific**
23  **type of training that Mr. Labriola would**
24  **undergo?**
25   A.   The Office of the Chair requested

1  that she participate in one of our standard
2  trainings related to IO 7-45, but we never got
3  to the specifics in terms of what type of
4  training.  We offered various types including
5  in-person, classroom-lead, instructor-lead
6  training as well as remote virtual training
7  online, so in terms of the content that is
8  already established.  That is standard.  But
9  in terms of the type of training format, we
10 never got to that.
11     **Q.   So you never got to which specific**
12 **training module or training course at**
13 **Mr. Labriola's --**
14     A.   No.  The courses already exist based
15 on the training on IO 7-45.  The content was
16 already in place, but we offer various formats
17 and I guess forums to deliver that training
18 where we tailor it to the unique work
19 environments and the needs of the operation of
20 that particular department or workplace,
21 because everyone has different needs so, but
22 we never got to that point.
23     **Q.   Now, what you said was very**
24 **interesting, because Isidoro Lopez told me**
25 **that you're responsible for determining the**

1  **type of training, so what do you say about**
2  **that?**
3           MR. CANDELA:  Object to the form.
4           THE WITNESS:  Yeah.  I'm -- I don't
5      really understand the question.
6           MR. BUMBU:  Well, when I deposed
7      Isidoro Lopez and I asked him for the
8      specific type of training, he deferred to
9      you, so what do you have to say about
10     that?
11          MR. CANDELA:  Object to the form.
12          You can answer.
13          THE WITNESS:  Okay.
14          So, like I mentioned previously, the
15     training exists, right?  The standard
16     course that we mandate all over our
17     employees take.
18          We can make recommendations to the
19     various departments, but ultimately it's
20     the discretion of the Chair in this case,
21     or the Department Director whether to
22     adopt those recommendations.
23          I don't have any authority to mandate
24     someone who works for the Chair's Office
25     to participate in the training.

1        We can obviously recommend, consult
2    and work with even the Chair's Office or
3    the Department to make recommendations,
4    and in this case it was determined by the
5    Chair's Office that the training on the IO
6    7-45 would be, you know, something that
7    would be very beneficial in light of this
8    particular case but, I mean, that's --
9    that's all I have to say, because I can't
10   mandate that any employee participate in
11   any particular type of training other than
12   the fact that per our policy, all of our
13   employees are required to take this
14   generally every three years.
15 BY MR. BUMBU:
16   **Q.   By every three years, are you**
17 **referring to the Diversity Matters program?**
18   A.   Yes.  Diversity Matters is the kind
19 of grant which serves as the umbrella for the
20 training on our policy IO 7-45.
21   **Q.   But -- okay.  So is the IO 7-45**
22 **training module part of the Diversity Matters**
23 **program umbrella?**
24   A.   Yes.
25   **Q.   Well, okay.**

```
 1            THE WITNESS:  Like I said, it's a
 2      brand.  It's not a specific training
 3      course.  The mandatory training related to
 4      the IO falls under the umbrella of the
 5      brand, and that's the only mandatory
 6      training course that would fall under that
 7      umbrella as related to IO 7-45.
 8  BY MR. BUMBU:
 9      Q.   All right.  I'll take you back to the
10  screen share.
11           Okay.  Now, so isn't it true that on
12  April 12th, 2021, Elda Green sent an e-mail to
13  Andrew Mullings asking:  Can you provide me
14  with a list of all of the employees in the BCC
15  Department who have completed this training?
16      A.   Is that a question?
17           I'm sorry.
18      Q.   Yes.
19      A.   Can you repeat the question?
20      Q.   Is it -- is it -- is it true that
21  Elda Green sent an e-mail to Andrew Mullings
22  asking, can you provide me with a list of all
23  of the employees in the BCC Department who
24  have completed this training?
25           MR. CANDELA:  Object to the form.
```

1       point.
2              There is mandatory training for all
3       county employees.
4              MR. BUMBU:  Yes.
5              THE WITNESS:  And we have other
6       workshops that are not mandatory.  They
7       all fall under this umbrella, if that
8       makes sense to you.
9              MR. BUMBU:  Okay.  I'm going to stop
10      the screen share and -- hmm.
11             What specific -- hang on.
12             What specific programs under the
13      Diversity Matters umbrella would
14      Mr. Labriola have had to take?
15             MR. CANDELA:  Object to the form.
16             THE WITNESS:  The mandatory training
17      related to IO 7-45, our anti-
18      discrimination policy.
19  BY MR. BUMBU:
20      **Q.   Okay.  All right.  So would**
21  **Mr. Labriola have been -- would Mr. Labriola**
22  **have been required to undergo a program called**
23  **Transgender Sensitivity and Inclusion?**
24      A.   No.
25      **Q.   Would Mr. Labriola have been required**

```
 1              THE WITNESS:  Can you clarify?  The
 2      question was, which part of the IO points
 3      to -- like -- or were you talking about
 4      the article itself?
 5              MR. BUMBU:  My question was, which
 6      specific provision of IO 7-45 do you
 7      believe that the opinion piece violated?
 8              THE WITNESS:  Okay.
 9              Can you scroll down?
10              Keep going.  Keep going.
11              Keep going.  Hold on.
12              MR. BUMBU:  All right.  Well, tell me
13      when to stop then.
14              THE WITNESS:  Keep going.
15              There is a full paragraph about
16      inappropriate conduct and social media,
17      personal use of social media.
18              You can stop there.
19              So it's that section, personal use of
20      social media.
21   BY MR. BUMBU:
22      Q.   Okay.  So I'm going to stop the
23   screen share.
24              All right.  So, Ms. New, did you
25   discuss John Labriola's case with Orlando
```

## CERTIFICATE OF OATH

STATE OF FLORIDA    )

COUNTY OF BROWARD   )

I, the undersigned authority, certify that the Witness appeared before me remotely via videotaped Zoom Video Conference, and was duly sworn or affirmed pursuant to Florida Supreme Court Administrative Order AOSC-20-16.

WITNESS my hand and official seal this 26th day of June, 2023.

_Susan D. Fox_
Susan D. Fox, FPR
Notary Public - State of Florida
My Commission HH384998
My Commission expires 5/15/2027

```
 1

 2               C E R T I F I C A T E

 3   THE STATE OF FLORIDA        )

 4   COUNTY OF BROWARD           )

 5
             I, Susan D. Fox, Florida Professional
 6   Reporter and Notary Public in and for the
     State of Florida at Large, do hereby certify
 7   that the aforementioned witness was by me
     first duly sworn to testify the whole truth;
 8   that I was authorized to and did report said
     video conference deposition in Stenotype; and
 9   that the foregoing pages are a true and
     correct transcription of my shorthand notes of
10   said deposition.

11           I further certify that said
     deposition was taken at the time and place
12   hereinabove set forth and that the taking of
     said deposition was commenced and completed as
13   set forth.

14           I further certify that I am not an
     attorney or counsel of any of the parties, nor
15   am I a relative or employee of any attorney
     interested in the action.

16
             The foregoing certification of this
17   transcript does not apply to any reproduction
     of the same by any means unless under the
18   direct control and/or direction of the
     certifying reporter.
19
             IN WITNESS WHEREOF, I have hereunto
20   set my hand this 1st day of July, 2023.

21                    _____
                      Susan D. Fox, FPR
22                    Notary Public - State of Florida
                      My Commission HH384998
23                    My Commission expires 5/15/2027

24

25
```