UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-23196-PCH

**JOHN F. LABRIOLA**

    Plaintiff.

**v.**

**MIAMI-DADE COUNTY,**

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon the Plaintiff, John F. Labriola's ("Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 43] and the Defendant, Miami-Dade County's (the "County" or "Defendant") Motion for Summary Judgment and Incorporated Memorandum of Law ("Defendant's Motion") [ECF No. 44], the parties' respective responses in opposition to their cross-motions for summary judgment ("Plaintiff's Response" & "Defendant's Response") [ECF No. 48 & 50], and the parties' subsequent replies to those responses [ECF No. 52 & 53]. The parties have also filed statements of material facts in support of their Motions ("Plaintiff's SOF" & "Defendant's SOF") [ECF No. 46 & 42] and opposing statements of material facts [ECF No. 51 & 49]. Plaintiff alleges that Defendant violated his First Amendment rights after suspending him from employment for three days, ordering standard anti-discrimination training, and then firing Plaintiff for refusing to attend that training. In response, Defendant argues that it did not violate Plaintiff's First Amendment rights because he was dismissed for insubordination, not his discriminatory speech, and Defendant's need to preserve government function outweighed Plaintiff's First Amendment interest in the speech at

1

issue. The Court has carefully reviewed the pending motions, the parties' briefs, the record, and the applicable law. For the reasons that follow, Plaintiff's Motion is due to be **DENIED** and Defendant's Motion is due to be **GRANTED**.

## I. BACKGROUND

Plaintiff worked for Defendant as a Commission Media Aide for the Board of County Commissioner's ("BCC") Media Division from June 2013 through April 2021. *See* Plaintiff's SOF at 1. The BCC is the legislative body of the County, made up of elected commissioners representing different County districts. *Id.* In this role, Plaintiff drafted media communications on behalf of various County commissioners, including press releases concerning legislative developments and city events, and talking notes for County commissioners' speeches. *Id.* at 2-4. Then-Chairman of the BCC and current Mayor of Sweetwater, Florida, Jose "Pepe" Diaz ("Diaz") was Plaintiff's boss. *Id.* at 2. Until the events that are the subject of this lawsuit occurred, Plaintiff received positive performance reviews and completed his job duties without issue. *Id.* at 1.

Plaintiff is also a self-described Christian who has "sincere religious beliefs about human sexuality and using [his] talents to spread God's truths." *See* Declaration of Plaintiff in Support of Motion for Summary Judgment [ECF No. 46-1] at 1. It is because of these sincerely held beliefs that, in March of 2021, Plaintiff wrote and submitted an article (the "Opinion Piece") to the now-defunct online newsletter Sophie's Voice. Plaintiff's SOF at 4. In this Opinion Piece, Plaintiff discussed his views on the then-pending Equality Act being considered in the United States House of Representatives. *Id.* In particular, Plaintiff wrote that the Equality Act's legal protection of marriages and gender identities that did not comport with Plaintiff's religious views would have negative impacts on the rights of Christians with views similar to his. *See* Opinion Piece [ECF No. 8-3]. Plaintiff also expressed additional views, which are at the crux of this case, that went beyond legislative acts. Plaintiff explicitly referred to LGBTQ people – the minority group that

the Equality Act would protect – using derogatory slurs and offensive stereotypes such as "scary-looking, child-molesting tranny" and "flamboyant, heavily-made up pedophile in a dress." *Id.* Plaintiff signed the Opinion Piece with his full name and included what appears to be a photograph of his face but did not otherwise indicate that he was a County employee. *Id.*

Not surprisingly, on March 3, 2021, a concerned Miami-Dade County citizen emailed several members of the BCC staff, taking issue with the opinions expressed in Plaintiff's Opinion Piece and questioning whether those opinions were representative of the County's views of its own LGBTQ citizens. *See* Email to BCC Staff [ECF No. 8-4] at 3-4. A County employee then forwarded that email to an employee of the Miami Herald. *Id* at 1. On March 5, 2021, the Miami Herald published an article reporting Plaintiff's Opinion Piece, describing it as a "slur-laden tirade against transgender people." *See* Miami Herald Article [ECF No. 8-5 at 1]. Several County employees, including Plaintiff's co-workers and Diaz himself, were upset by the Opinion Piece. Defendant's SOF at 4-6. Additionally, a "barrage of phone calls" from concerned County residents about the article and media reporters interfered with the County's ability to carry out its typical governmental duties from at least March 3, 2021, through March 5, 2021. *Id.* at 6. Chief of Staff Isidoro Lopez ("Lopez") described the reaction to the Opinion Piece as demonstrating "a lack of confidence in county government because of something that was written by an employee that has a very close nexus to the office of the chair [Diaz]." *See* Deposition of Isidoro Lopez (ECF No. 45-15) at 77.

On March 5, 2021, Diaz drafted and issued a Disciplinary Action Report ("DAR"), in which he informed Plaintiff that the Opinion Piece went beyond discussing legislation and "made several inflammatory and insulting statements that are offensive to the community that we both serve." *See* DAR [ECF No. 8-7] at 2. Diaz suspended Plaintiff from work for three days and ordered Plaintiff to schedule and complete "training regarding the County's anti-discrimination

policies" within the next 30 days. *Id.* Diaz also attached a copy of Implementing Order 7-45 ("IO 7-45"), the County's anti-discrimination and workplace policy covering all of its employees. *See* IO 7-45 [ECF No. 8-15]. IO 7-45 training is "mandatory for all County employees." *See* Defendant's SOF at 2. Plaintiff refused to comply with Diaz's order to schedule training. *Id.* at 8. Consequently, on March 17, 2021, Defendant again ordered Plaintiff to schedule training. *Id.* Again, Plaintiff failed do as ordered. *Id.* Again, on March 25, 2021, Defendant ordered Plaintiff to schedule training. *Id.* Plaintiff still failed to comply. *Id.* Yet again, on March 29, 2021, Defendant ordered Plaintiff to schedule training. *Id.* Plaintiff never scheduled the ordered training, despite having multiple opportunities from Defendant to do so. *Id.*

Plaintiff continued to work for the County until April 13, 2021. *See* Termination Letter [ECF No. 45-21]. Diaz terminated Plaintiff's employment because Plaintiff failed to schedule the requested training despite three separate written orders from his employer to do so. *Id.* This lawsuit followed.

On November 15, 2022, Plaintiff filed his Amended Complaint, asserting the following claims against Defendant: counts I, III, and VI based on alleged violations of the free speech clause of the First Amendment, count III based on a First Amendment overbreadth challenge to IO 7-45, counts IV and V based on alleged violations of the free exercise clause of the First Amendment, and count VII based on alleged violations of the free press clause of the First Amendment. *See* Amended Complaint [ECF No. 8] at 12-27. Plaintiff later moved for summary judgment on counts I, III, IV, and VI. Plaintiff's Motion at 1. Defendant moved for summary judgment on all counts of Plaintiff's Amended Complaint. Defendant's Motion at 20.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); Fed. R. Civ. P. 56(a).  Genuine issues of material fact exist when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All factual inferences must be considered in a light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

The movant has the initial burden of showing that genuine issues of material fact do not exist.  *See Clark v. Coats & Clarks, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The movant "may carry its burden of showing no genuine issue of material fact by showing 'an absence of evidence to support the nonmoving party's case.'"  *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 723 (11th Cir. 2019) (quoting *Celotex Corp.*, 477 U.S. at 325).  Once the moving party has met its burden, the burden shifts to the non-moving party to come forward with evidence showing genuine issues of material fact.  *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002).  "[I]f the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper."  *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  DISCUSSION

Though the parties raise several arguments in their filings, the Court finds that three dispositive issues resolve the entirety of the parties' dispute: 1) whether Defendant's firing of Plaintiff violates any of Plaintiff's First Amendment rights, 2) whether IO 7-45 is unconstitutionally broad, and 3) whether Plaintiff may bring a freedom of the press claim under the facts of this case.[1]  The Court will analyze each question in turn.

---

[1] The Court acknowledges that there is merit to Defendant's argument that Defendant did not dismiss Plaintiff because of his religious beliefs but because of his blatant insubordination to his employer's orders to schedule and complete standard anti-discrimination training.  *See* Defendant's Motion at 17-18.  However, the First Amendment questions presented here are

5

### 1.  Plaintiff's Free Speech and Free Exercise Claims

Plaintiff argues that Defendant's suspension, training order, and subsequent firing violate his First Amendment rights under the *Pickering-Connick* balancing test.[2]  Plaintiff's Motion at 8. A public employee's right to free speech "is not absolute." *Bryson v. City of Waycross*, 88 F.2d 1562, 1565 (11th Cir. 1989).  "A public employee's interests are limited by the state's need to preserve efficient governmental functions." *Id.* (citing *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).  To balance both important interests, courts use the *Pickering-Connick* test, under which courts conduct a four-step analysis.  *Snipes v. Volusia County*, 704 Fed. Appx. 848, 851 (11th Cir. 2017).  In this case, the parties do not contest the first two steps of this analysis, establishing whether Plaintiff spoke as a private citizen regarding matters of public concern.  *See* Defendant's Motion at 11.  Thus, the Court need only "weigh the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Snipes*, 704 Fed. Appx. at 852 (citations omitted). To weigh these two interests, courts consider "1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Id.* (citing *Morales v. Stierheim*, 848 F.2d 1145, 1149 (11th Cir. 1988)).

Here, the *Pickering-Connick* balancing test weighs in the Defendant's favor.  First, although the parties disagree on the scope of the disruption, the Opinion Piece did cause at least a

---

dispositive of the issues a whole.  Therefore, the Court need not and does not analyze Defendant's additional arguments.

[2] Plaintiff correctly argues that Plaintiff's free exercise clause challenges should also be analyzed using the *Pickering-Connick* test under binding Eleventh Circuit precedent.  *See Shahar v. Bowers*, 114 F.3d 1097, 1111 n. 27 (11th Cir. 1997).  Thus, the Court's analysis here covers counts I, II, IV, V, and VI of the Amended Complaint, which are all based on alleged violations of the free speech and free exercise clauses of the First Amendment.

minor scandal that impeded the government's ability to perform its duties efficiently. *See* Defendant's SOF at 6. The Opinion Piece also disrupted the harmony of the office; Diaz and several of Plaintiff's co-workers expressed at the minimum discomfort with and at the worst took offense at the Opinion Piece. *Id.* at 4-6. Crucially, Plaintiff's role as a Media Aide was indelibly compromised by the Opinion Piece—Lopez testified that, as a result of the Opinion piece, County residents suffered a lack of confidence in their local government. *See* Deposition of Isidoro Lopez at 77. "[G]overnments have a strong interest in staffing their offices with employees that they fully trust." *MicKinley v. Kaplan*, 262 F.3d 1146, 1150 (11th Cir. 2001). Accordingly, the Court affords strong consideration to the fact that the patently offensive slurs and statements in the Opinion Piece compromised Defendant's confidence in Plaintiff's ability to fulfill his role as a writer for the voice of the County.

Second, although Plaintiff did write the speech as a private citizen on his own time, a public employee has less First Amendment interest in speech that is "disrespectful, demeaning, insulting and rude," even on a matter of public concern. *See Shi v. Montgomery*, 679 F. App'x. 828, 835 (11th Cir. 2017) (affirming summary judgment against public employee's § 1983 claim that he was dismissed in violation of his first amendment rights after calling his employer a "dictatorial leader."). Here, as the DAR clarifies, Plaintiff was disciplined not merely for expressing a political opinion but for his use of slurs and other offensive statements in the Opinion Piece. *See* DAR. Thus, the manner in which Plaintiff delivered his speech counts heavily in Defendant's favor.

Thirdly, the context within which the speech was made, published in the now-defunct online newsletter Sophie's Voice, does not weigh for or against either party.

Moreover, it is well established in our courts' freedom of speech jurisprudence that "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem . . . These include the lewd and

7

obscene, the profane, the libelous . . . ." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572-573 (1942).  Likewise, Plaintiff's speech here is the kind for which he may be reasonably disciplined without raising any Constitutional problem.  The nature of Plaintiff's speech tips the *Pickering-Connick* balancing test further in favor of Defendant.

Considering all of the above, the *Pickering-Connick* balancing test is in the County's favor; accordingly, summary judgment in Defendant's favor is due on counts I, II, IV, V, and VI of the Amended Complaint.

### 2.    IO 7-45

Plaintiff argues that IO 7-45 is unconstitutionally overbroad.  Plaintiff's Motion at 5.  "In determining whether a public employer's policy that prospectively restricts speech is unconstitutionally overbroad, courts apply a modified version of the *Pickering-Connick* test." *O'Laughlin v. Palm Beach County,* 30 F.4th 1045, 1054 (11th Cir. 2022).  Under this test, the government faces a "heavy burden" to show that the interests of present and future government employees, along with those of potential audiences, "are outweighed by that expression's necessary impact on the actual operation of the Government."  *Id.* (citing *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 468 (1995) (quotation marks omitted)).  The County has met this burden.

Plaintiff argues that IO 7-45 suffers from the same unconstitutional "astonishing breadth" that the policy in *O'Laughlin* possessed.  Plaintiff's Motion at 5-8.  The Court disagrees; IO 7-45 is sufficiently limited to prohibit "discrimination" and "harassment."  IO 7-45 at 1.  IO 7-45 also prohibits "[i]nappropriate postings or communication on personal social media that include discriminatory remarks, harassment, bullying, threats of violence, or similar inappropriate or unlawful conduct."  *Id.* at 6.  These are sufficiently discrete categories of speech.  *See Doe v.*

*Valencia*, 903 F.3d 1220, 1231–1233 (11th Cir. 2018) (upholding college's code of conduct against overbreadth challenge where code prohibited "stalking," which the code defined as conduct that "alarms, torments or terrorizes.") Additionally, public employees have little First Amendment interest in expressing discriminatory or harassing language, and potential audiences have even less First Amendment interest in reading or hearing discriminatory or harassing language. IO 7-45 is readily distinguishable from the policy in *O'Laughlin*, which covered any public employee communication that "could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public." *O'Laughlin*, 30 F.4th at 1055. This amorphous standard is a far cry from the discrete categories identified in IO 7-45. Therefore, summary judgment in Defendant's favor on count III of the Amended Complaint is due.

### 3. Plaintiff's Freedom of the Press Claim

Defendant argues that there is no evidence in the record indicating that the County restricted Plaintiff's ability to act as a member of the press. Defendant's Motion at 20. Therefore, Plaintiff has no basis for stating a claim under the freedom of the press clause of the First Amendment. *Id*. In response, Plaintiff argues that the freedom of the press is a "fundamental personal right," relying on *Branzburg v. Hayes*, 408 U.S. 665 (1972), for this proposition. Plaintiff's Response at 24. It is therefore "irrelevant" that Plaintiff was not a member of the press, because the Opinion Piece was "a vehicle of information and opinion." *Id.*

Plaintiff does not cite any authority to support his position that a private citizen, who is not a journalist, may bring a freedom of the press claim based on one letter he submitted to a now-defunct online newsletter.[3] Neither is the Court aware of any such authority. Notably, *Branzburg*

---

[3] Even if Plaintiff could assert a freedom of the press claim under these facts, the Court is not persuaded that such claim would survive summary judgment. "While case law does recognize that

dealt with a freedom of the press claim in a context materially different from the one that Plaintiff presents here. 408 U.S at 682 ("The sole issue before us is the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime."). Thus, the Court agrees with Defendant that Defendant did not infringe on Plaintiff's rights under the freedom of the press clause of the First Amendment, and summary judgment in Defendant's favor on count VII is due.

## IV. CONCLUSION

For the reasons explained above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**. The Court shall enter a separate judgment forthwith.

**DONE AND ORDERED** in Miami, Florida, on September 21, 2023.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

---

members of the press have an important place in a free society, they are afforded no **greater First Amendment rights than ordinary citizens**, who are free to publish information as well." *Cooper v. Dillon*, 403 F.3d 1208, 1223 n.3 (11th Cir. 2005) (emphasis added). Plaintiff's alleged freedom of the press claim would not succeed where Plaintiff's other First Amendment claims fail. Thus, even on the merits, Plaintiff's freedom of the press claim does not survive summary judgment.